UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Roger Wilkins, Jr.

    v.                                Case No. 17-cv-454-PB
                                        Opinion No. 2018 DNH 204

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**O R D E R**

Richard Wilkins moves to reverse the decision of the Acting Commissioner of the Social Security Administration ("SSA") to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings.

**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

1

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the standard of review that applies when an applicant claims that an SSA adjudicator made a factual error,

> [s]ubstantial-evidence review is more deferential than it might sound to the lay ear: though certainly "more than a scintilla" of evidence is required to meet the benchmark, a preponderance of evidence is not. Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted). Rather, "[a court] must uphold the [Acting Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (per curiam).

Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

## II. Background

The parties have submitted a Joint Statement of Material Facts. That statement, document no. 10, is part of the court's record and will be summarized here, not repeated in full.

Wilkins was born in 1964. He last worked in March of 2013, installing exterior trim and siding. In October of 2013, he fell off a ladder, and when he went to the doctor shortly thereafter, an MRI indicated a partial tear of the subscapularis

2

tendon, tendonitis, and a partial tear of the myotendinous junction.  In November of 2013, Wilkins injured a hip in a motor vehicle accident.  Based upon a diagnosis of avascular necrosis,[1] he underwent a left-hip arthroplasty in February of 2013.[2]

Wilkins applied for DIB in March of 2015, claiming that he had been disabled since March of 2013, because of arthritis in his hip and back, hip-replacement pain, shortness of breath, and asthma.  He later amended the alleged onset date of his disability to November 27, 2013.

In June of 2015, Dr. Marcia Lipski, a non-examining state-agency consultant, assessed Wilkins's physical residual functional capacity ("RFC").[3]  In terms of exertional capacity, Dr. Lipski opined that Wilkins could: (1) lift and/or carry 10

---

[1] Avascular necrosis is the "[p]athological death of one or more cells, or of a portion of tissue or organ, resulting from irreversible damage" which is caused by "deficient blood supply."  Stedman's Medical Dictionary 1284, 1285 (28th ed. 2006).

[2] Arthroplasty is defined as the "[c]reation of an artificial joint," and as "[a]n operation to restore as far as possible the integrity and functional power of a joint." Stedman's, supra note 1, at 161.

[3] "An applicant's residual functional capacity 'is the most [he or she] can still do despite [his or her] limitations.'" Purdy, 887 F.3d at 10 n.2 (quoting 20 C.F.R. § 416.945(a)(1), a regulation governing claims for supplemental security income that is worded identically to 20 C.F.R. § 404.1545(a), which governs claims for DIB) (brackets in the original).

pounds frequently and 20 pounds occasionally;[4] (2) stand and/or walk, with normal breaks, for a total of about six hours in an eight-hour work day; (3) sit, with normal breaks, for about six hours in an eight-hour work day; and (4) push and/or pull the same amount he could lift and/or carry. In terms of postural limitations, Dr. Lipski opined that Wilkins had an unlimited capacity for balancing, but could only occasionally: (1) climb ramps and stairs; (2) climb ladders, ropes, and scaffolds; (3) stoop; (4) kneel; (5) crouch; and (6) crawl. Finally, Dr. Lipski opined that Wilkins had no manipulative, visual, communicative, or environmental limitations.

In August of 2015, Jason Dorran, a physician's assistant, completed a Physical Residual Functional Capacity Questionnaire in which he opined that Wilkins's experience of pain or other symptoms would often interfere with his attention and concentration. However, P.A. Dorran declined to offer opinions on any specific functional capacities, stating that "[f]or objective limitations/restrictions, [Wilkins] would need a functional capacity evaluation." Administrative Transcript (hereinafter "Tr.") 458.

---

[4] The form that Dr. Lipski completed defines "occasional" as "cumulatively 1/3 or less of an 8 hour day." Administrative Transcript 66.

4

In April of 2016, Todd Karalius, an advanced practice registered nurse who had treated Wilkins, wrote a letter addressed to whom it may concern in which he stated:

> Based on my examination of Mr. Wilkins and a review of his file, it is my opinion that he meets Listing 1.03 for reconstructive surgery of a major weight-bearing joint. Specifically post surgery on his left hip he cannot ambulate effectively, as defined in 1.00B2b, and is not expected to return to effective ambulation within 12 months. He is not expected to be able to walk a block at a reasonable pace on rough or uneven surfaces; or climb a few steps at a reasonable pace with the use of a single hand rail.

Tr. 572.

In early June of 2016, Danielle Amero, an occupational therapist, administered a Key Whole Body Assessment and determined that Wilkins could: (1) sit for one to two hours in a work day, in 25-minute increments; (2) stand for one hour in a work day, in five-minute increments; and (3) walk for one to two hours in a work day, for occasional short distances. With respect to postural activities, Ms. Amaro found that Wilkins could: (1) climb stairs minimally/occasionally;[5] (2) balance minimally/ occasionally; (3) stoop minimally/occasionally; (3)

---

[5] The form that Ms. Amero completed defines "minimally occasional" as one to five percent of a work day, or up to 30 minutes. See Tr. 593.

5

kneel occasionally;⁶ (4) not crouch at all; and (5) crawl continuously.

After the SSA denied Wilkins's application, he received a hearing before an Administrative Law Judge ("ALJ"). The ALJ did not take testimony from a vocational expert ("VE"). On August 31, 2016, the ALJ issued a decision in which she found that Wilkins: (1) had one severe impairment, "status post left total hip replacement," Tr. 27; but (2) did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments" in the applicable Social Security regulations, Tr. 29. In her discussion of Wilkins's RFC, the ALJ said that she "afforded significant weight," Tr. 31, to Dr. Lipski's opinion, and she gave Wilkins the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [he] cannot climb ladders/ropes/scaffolds and he cannot crawl or crouch. He needs to avoid exposure to unprotected heights.

Tr. 29-30.

While Dr. Lipski had opined that Wilkins could occasionally climb ladders, ropes, and scaffolds, and could occasionally crouch and crawl, the ALJ found that he could not perform any of

---

⁶ The form that Ms. Amero completed defines "occasional" as six to thirty-three percent of a work day, or between 30 minutes and two and one half hours. See Tr. 593.

6

those postural activities at all. And while Dr. Lipski opined that Wilkins could only occasionally climb ramps and stairs, stoop, and kneel, the ALJ, by imposing no limitations on those three postural activities, necessarily found that Wilkins had an unlimited capacity to perform them. However, for reasons that are unclear, the ALJ provided no explanation for her numerous deviations from Dr. Lipski's RFC assessment.

In any event, in light of the RFC she gave Wilkins, the ALJ determined that he could not perform his past relevant work, but could perform "jobs that exist in significant numbers in the national economy." Tr. 32. She explained her decision this way:

> If the claimant had the residual functional capacity to perform the full range of light work, considering [his] age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 201.14. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of these rules (**See**: SSR-85-15 establishing that such limitations have little effect on the occupational base of light work).

Tr. 32 (emphasis in the original).

Wilkins appealed his unfavorable decision to the SSA's Appeals Council ("AC"). He filed three new pieces of evidence with the AC: (1) a September 9, 2016, letter from a physician's assistant opining that he had severe limitations on his capacities for sitting, standing, and walking and "that he would

7

not be able to perform any gainful employment," Tr. 11; (2) a September 9, 2016, prescription for a cane, for "use as needed," Tr. 10; and (3) a record from a March 31, 2016, MRI of his lumbar spine which led to an impression of "[d]egenerative changes and degenerative disc disease," Tr. 8, and a diagnosis of "ankylosing spondylitis of [the] thoracolumbar region," id.[7] The AC denied Wilkins's appeal, and also ruled that: (1) the MRI report and the letter from the physician's assistant did "not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision," Tr. 2; and (2) the September 9, 2016, cane prescription did not affect the ALJ's decision that Wilkins was not disabled before August 31, 2016, because the cane prescription did "not relate to the [time] period at issue," id.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under

---

[7] Ankylosing spondylitis is "arthritis of the spine, resembling rheumatoid arthritis, which may progress to bony ankylosis with ossification of the anterior and posterior longitudinal ligament." Stedman's, supra note 1, at 1813. Ankylosis is "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." Id. at 94.

8

a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that Wilkins was not under a disability from November 27, 2013, through August 31, 2016, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step sequential evaluation process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Purdy, 887 F.3d at 10 (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

At the first four steps in the sequential evaluation process, the claimant bears both the burden of production and the burden of proof. See Purdy, 887 F.3d at 9 (citing Freeman

9

v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must prove he is disabled by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). If the [claimant's] limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the [claimant's] exertional capacity, age, education, and work experience. If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).

B. <u>Wilkins's Claims</u>

Wilkins's memorandum of law is brief and underdeveloped. As best I can tell, and giving Wilkins the benefit of the doubt, it appears that he is claiming that the ALJ erred by: (1) failing to find, at step two of the sequential evaluation process, that his back condition was a severe impairment; (2) failing to find, at step three, that he had an impairment or combinations of impairments that met or equaled the severity of a listed impairment; and (3) making an RFC assessment that was not supported by substantial evidence.[8]  I agree with Wilkins that the ALJ made a reversible error in assessing his RFC.

Wilkins claims that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ: (1) failed to address his need for a cane; (2) gave great weight to Dr. Lipski's opinion; and (3) failed to include several limitations from Dr. Lipski's opinion in his RFC.

Wilkins's first claim is off the mark; the ALJ <u>did</u> mention Wilkins's use of a cane in his RFC assessment.  Specifically,

---

[8] Perhaps out of an abundance of caution, the Acting Commissioner has construed claimant's memorandum of law as claiming that the three pieces of evidence he submitted to the AC, after the ALJ rendered her decision, require a remand. While I appreciate the Acting Commissioner's caution, and am inclined to read claimant's memorandum of law broadly, I see nothing in that memorandum that suggests a claim that the post-decision evidence requires a remand.  Accordingly, I decline to address such a claim.

she noted that Wilkins did not have a prescription for a cane, had been told by his doctors to stay active, and had engaged in a variety of activities such as riding a mountain bike, cutting firewood, and ice fishing, that militated against including a cane-related limitation in his RFC.  Thus, I am not persuaded by Wilkins's claim that the ALJ's RFC is not supported by substantial evidence because it does not include a cane-related limitation.

Wilkins's third claim, however, is persuasive and dispositive.  As noted, the ALJ gave great weight to Dr. Lipski's opinion.  But the ALJ gave Wilkins an RFC that only incorporated one of the seven postural limitations in Dr. Lipski's opinion, i.e., her opinion that Wilkins had an unlimited capacity for balancing.  As for the other six postural activities, the ALJ found that Wilkins had: (1) less capacity for three of them (crawling, crouching, and climbing ladders, ropes, and scaffolds) than Dr. Lipski had found; and (2) an unlimited capacity for the other three (kneeling, stooping, and ramp-and-stair climbing), despite Dr. Lipski's finding that Wilkins could perform those activities only occasionally.

The ALJ's finding that Wilkins had an unlimited capacity for kneeling, stooping, and ramp-and-stair climbing is unsupported by any expert opinion.  That is a problem.  As I have recently explained:

> An ALJ is a lay person when it comes to medical
> evidence, and therefore she "cannot ignore medical
> evidence or substitute [her] own views for
> uncontroverted medical opinion." Nguyen [v. Chater],
> 172 F.3d [31,] 35 [(1st Cir. 1999)] (citing Rose v.
> Shalala, 34 F.3d 13, 18 (1st Cir. 1994)). Where
> medical experts state that a claimant has a particular
> limitation, an ALJ must accept that expert opinion
> unless there is another expert opinion that
> contradicts it. Id.

Packer v. Berryhill, No. 17-cv-260-PB, 2018 WL 2426664, at *3 (D.N.H. May 30, 2018).

Here, the ALJ either ignored Dr. Lipski's opinions on Wilkins's capacities for kneeling, stooping, and ramp-and-stair climbing, or consciously rejected them, without a countervailing expert opinion. Either way, she erred. The Acting Commissioner concedes that "[t]he ALJ did not adopt every limitation in [Dr. Lipski's] opinion," Resp't's Mem. of Law (doc. no. 9-1) 6, and she offers this justification: "[T]he assessed limitations were reasonable under the deferential standard of review. A reasonable mind could have relied in part on Dr. Lipski's opinion, and thus remand is not appropriate." Id. The Acting Commissioner's argument is unavailing.

As a preliminary matter, I do not review RFC assessments to determine whether they are reasonable. The question before me is whether an ALJ's RFC assessment, or any other factual finding, is supported by substantial evidence.

13

Turning to the RFC assessment in this case, the ALJ adopted some but not all of the limitations in Dr. Lipski's opinion.  An ALJ's selective adoption of limitations from a medical opinion is not necessarily a problem because "an ALJ faced with two conflicting medical opinions need not credit one or the other, in its entirety, but is entitled to craft an RFC by selecting individual functional capacities from both," Bubar v. Astrue, No. 11-cv-107-JL, 2011 WL 6937507, at *5 (D.N.H. Dec. 5, 2011) (citing Evangelista v. Sec'y of HHS, 826 F.2d 136, 144 (1st Cir. 1987)), R. & R. approved by 2011 WL 6937476 (Dec. 30, 2011). But an ALJ is not entitled to do what the ALJ did here, which was to replace three of Dr. Lipski's limitations not with limitations from a contradictory medical opinion, but with her own view that Wilkins had an unlimited capacity for kneeling, stooping, and stair-and-ramp climbing.  See Packer, 2018 WL 2426664, at *3.  Indeed, while calling the ALJ's RFC reasonable, the Acting Commissioner does not even attempt to identify any evidence supporting the kneeling, stooping, and stair-and-ramp climbing components of the ALJ's RFC, and my review of the record reveals no opinion that posits any limitations on those activities that are less restrictive than those in Dr. Lipski's opinion.  In sum, by giving Wilkins an RFC that replaced several limitations from Dr. Lipski's opinion with limitations that lack

support from a contradictory medical opinion, the ALJ committed an error that requires remand.  See id.

## IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 9, is denied, and Wilkins's motion to reverse that decision, document no. 6, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings consistent with this order, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

October 15, 2018

cc: Christopher G. Roundy, Esq.
    Robert J. Rabuck, Esq.